IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| United States of America<br>Plaintiff,<br><br>v.<br><br>Simon Wrecking, Inc. and Simon<br>Resources, Inc.,<br>Defendants. | CIVIL ACTION<br>No: 06-928 |

March 14, 2007                                                                                       Brody, Anita J.

### Opinion and Order

This is a cost recovery action filed by the United States against defendants Simon Wrecking and Simon Resources ("Simon") under CERCLA section 107. The United States seeks recovery of past and future response costs incurred at the Malvern Superfund Site. The United States has moved for partial summary judgment on liability, arguing that since Simon was found liable under CERCLA section 113 in an earlier contribution case for pollution at the same site, Simon is now from now estopped from relitigating its liability. Simon has filed a cross-motion for summary judgment on the ground that because the United States was itself liable for pollution at the site, it may not now file a

*O:\ABB 2007\US v Simon Wrecking summary judgment.doc*

1

cost recovery action under CERCLA section 107.  I conclude that Simon is precluded from relitigating its liability and nothing in the statute or binding case law prevents the United States from maintaining this cost recovery action under section 107.

## Jurisdiction and Standard

Jurisdiction is under 28 U.S.C. § 1331.  Summary judgment is proper where the "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## Background

The EPA identified over two hundred parties with potential CERCLA liability for the Malvern Superfund Site pollution ("potentially responsible parties" or PRPs). Among the PRPs were three federal agencies:  the National Institute of Health; the Defense Logistics Agency; and the United States Department of the Army/Letterkenny Army Depot.  Simon, who transported waste to the site from customers including the Letterkenny Army Deport, was also identified as a PRP.  In 1999, a group of PRPs known as the Chemchlene Site Defense Group or CSDG entered into a consent decree before Judge John P. Fullum, agreeing to perform remediation tasks specified by the EPA.  The federal agency PRPs later joined in the CSDG consent decree and contributed their share of the consent decree costs to the CSDG.[1]  Simon did not join the CSDG nor settle directly with the United States.

---

[1] *United States v. Action Manufacturing*, No. 99-4402, Order to Amend Consent Decree (E.D. Pa. April 30, 2002) (Fullam, J.).

The CSDG negotiated settlements for contributions to their cleanup costs from the remaining PRPs not included in the consent decree who had not otherwise settled with the United States.  However, Simon chose not to settle with the CSDG or the United States.  Accordingly, the CSDG sued Simon for contribution to its costs under CERCLA section 113 ("The Contribution Case").  Simon lost the Contribution Case after a bench trial before me.[2]  I found Simon liable as a transporter and ordered it to contribute a percentage of the consent decree cleanup costs to the CSDG.  The United States initiated the present CERCLA cost recovery suit against Simon after the trial but before judgment in the Contribution Case.

CERCLA Sections 107 and 113

CERCLA contains two main provisions under which PRPs can be required to pay for their pollution:  cost recovery under section 107; and contribution between polluters under section 113.  Section 107 cost recovery actions are further divided into two subsets:  those filed by a federal, state, or tribal government under section 107(a)(4)(A); and those filed by "any other person"  under section 107(a)(4)(B).  In the governments' cause of action, (4)(A), PRPs are jointly and severally liable for "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan."[3]  CERCLA section 107(a)(4)(A) (codified at 42 U.S.C. § 9606(a)(4)(A)).  In a (4)(B) action, PRPs are jointly and severally liable for "any other necessary costs incurred by any other person consistent with the national contingency plan."  CERCLA section 107(a)(4)(B) (codified at 42

---

[2] *Action Manufacturing v. Simon Wrecking Co., et al.,* No. 02-8964, Findings of Fact and Conclusions of Law (E.D.Pa. April 24, 2006)(Brody, J.) ("The Contribution Case").
[3] PRPs can also be directly ordered by the courts to abate pollution under CERCLA section 106.

3

U.S.C. § 9606(a)(4)(B)) (emphasis added). The "national contingency plan" is the statutory and regulatory framework for responding to pollution incidents, set out in part in CERCLA at 42 U.S.C. § 9605 and the accompanying EPA regulations. The statute of limitations for a cost recovery action under both (4)(A) and (B) is six years. In general, liability under CERCLA 107 is joint-and-several. *New Castle County, et al. v. Halliburton NUS Corp.*, 111 F.3d 1116, 1121 (3d Cir. 1997); *United States v. Chem-Dyne Corp.*, 572 F. Supp. 802, 809-11 (S.D. Ohio 1983).

Contribution actions between PRPs are governed by CERCLA section 113(f). When CERCLA was first enacted, section 113 did not exist and section 107 was the only provision relating to payments. Because there was no express right to contribution between polluters, under joint-and-several liability PRPs were left in the position of paying more than their share. As a result, courts historically found an implied right of contribution between PRPs in section 107. *New Castle*, 111 F.3d at 1122. Eventually, Congress codified the right to contribution by enacting section 113. *Id.*

Under section 113, a PRP may in turn sue other PRPs for an equitable contribution to cleanup costs.[4] 42 U.S.C. § 9613(f). A broad waiver of sovereign immunity allows a PRP to sue the United States for contribution if the United States is itself a PRP. 42 U.S.C. § 9620(a)(1). In *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004), the Supreme Court limited contribution actions between private PRPs to those who had already been subject to CERCLA enforcement action, rather than those who had voluntarily cleaned up. *Cooper* does not discuss federal PRPs seeking contributions. The statute of limitations for a contribution action is three years.

---

[4] A PRP may also use 113 if it has been ordered to perform an abatement action under CERCLA section 106.

4

Despite the fact that the plain language of section 107(a)(4)(B) would seem to allow any PRP who has incurred cleanup costs to sue other PRPs for cost recovery, the Third Circuit has held that private PRPs must instead file contribution actions under section 113. *New Castle*, 111 F.3d at 1122.  In *New Castle*, the plaintiffs---the municipality New Castle County and the corporations Rhone-Poulenc and Zeneca--- had earlier settled their liability as PRPs after the United States took legal action against them. *New Castle*, 111 F.3d at 1119.  Upon discovering another PRP after the statute of limitations on section 113 actions had already run, the plaintiffs attempted to bring a section 107(a)(4)(B) claim against the newly discovered PRP.   The Third Circuit held that the PRP plaintiffs could not use section 107(a)(4)(B) at all because section 113 is the only "appropriate mechanism" to allocate costs between two PRPs.  *Id.* at 1122.

The *New Castle* court reasoned that the legislative history and statutory construction of sections 113(f) and 107(a)(4)(B) demonstrate that Congress created section 113 specifically for contribution actions between PRPs, and that all actions having to do with PRPs sharing costs must accordingly be filed under section 113.  A cost recovery action under section 107(a)(4)(B) is limited to private "*innocent* parties," not the typical PRP. *Id.* at 1120 (emphasis in original).  Labeling the complaint as a "cost recovery" action could not transform the true nature of the action:  contribution between liable parties.  As the Third Circuit noted in dicta, the category of parties allowed to sue under 107(a)(4)(B) is very narrow, probably limited to private landowners who have not themselves caused any pollution on their property but are nevertheless liable as owners under CERCLA. *Id.* at 1123-24.  The Third Circuit reaffirmed its *New*

*Castle* holding in *E.I. Dupont De Nemours* v. *United States*, 460 F.3d 515 (3d Cir. 2006) (cert. pending).

Government PRPs

At least two lower courts in the Third Circuit have interpreted *New Castle*'s ruling on section 107(a)(4)(B) as a establishing a rule that federal, state, or tribal parties who are also PRPs may not use section 107(a)(4)(A), and are instead limited to a section 113 claim for contribution. *See United States v. National Railroad Passenger Corp., et al.*, 2004 WL 1335723 *4 (E.D.Pa. June 15, 2004) (holding *New Castle* forbids PRP SEPTA from using section 107 even if it is a "state" under section 107(a)(4)(A)); *In re Kaiser Group Int'l*, 289 B.R. 597, 605 (Bankr. D. Del. 2003) (same, with respect to a state university). Elsewhere, district courts have disagreed, holding that federal PRPs have an exception to the general rule that PRPs must use section 113 rather than section 107. *See*, *e.g., United States v. Hunter,* 70 F. Supp 2d 1100, 1108 (C.D. Cal. 1999).

Analysis

The United States does not dispute that it is a PRP attempting to impose joint and several liability on a co-PRP under section 107. However, *New Castle*'s proscription of PRP section 107 suits is not binding precedent in this case because *New Castle* does not address the rights of the federal, state, or tribal government to proceed under section 107(a)(4)(A). Instead, *New Castle* involves only a municipality and two corporations' rights under 107(a)(4)(B), which are distinct from state, federal, and tribal rights under (4)(A). *New Castle*, 111 F.3d at 1119 (describing plaintiffs); *see also* Hope Whitney, Cities and Superfund: Encouraging Brownfield Redevelopment, 30 Ecology L.Q. 59, 95-6 (2003) (noting with disapproval that PRP cities do not have the same rights to proceed under section 107 as do PRP federal, state, and tribal governments).

Subsections (4)(A) and (4)(B) are not identical. (4)(A) allows "the United States Government or a State or an Indian tribe" to recover "all costs of removal or remedial action...not inconsistent with the national contingency plan." (4)(B), a wholly separate provision, allows "any other person" to recover "any other necessary costs ...consistent with the national contingency plan." In addition to distinguishing between classes of plaintiffs, (4)(A) may provide broader recovery rights than (4)(B). Under (4)(A), governments may recover all costs "not inconsistent" with the NCP; but under (4)(B) all other parties are limited to costs "consistent" with the NCP. The difference between costs "not inconsistent" with the NCP and costs "consistent" with the NCP is probably ephemeral in most cases, but this language nevertheless further indicates that Congress intended (4)(A) and (4)(B) to be distinct remedies for distinct classes of plaintiffs.

While *New Castle* is not directly controlling, its broader analysis is still relevant to this case. Here, just as in *New Castle*, the plain language of section 107 appears to give the United States the right to cost recovery action; but in *New Castle* similarly clear language in 107 was insufficient to give private PRPs a right of action under 107. Instead, the court in *New Castle* examined 107 in light of 113, giving two central reasons why a PRP could not use section 107(a)(4)(B) against another PRP despite the statutory language appearing to permit such an action. First, a 107 cost recovery action (which is joint and several) would potentially allow a PRP to recover *all* its costs, regardless of fault, rather than being required to pay its equitable share for the pollution under a section 113 contribution action. Second, allowing a PRP to proceed under 107 would render 113 a nullity, because parties would always chose to proceed under the more

substantively and procedurally generous section 107. *E.I. Dupont de Nemours*, 460 F.3d at 521-22 (recapping *New Castle*).

Allowing the United States to proceed under 107(a)(4)(A) in this case does not pose the same pitfalls that the Third Circuit identified in *New Castle* with respect to private or municipal PRPs. The facts of this case demonstrate why. According to the complaint, the United States has incurred costs at the Malvern site beyond the total amount expended by or collected from the PRPs (including the federal PRPs) in their settlements and consent decrees. Thus, the United States could not have recovered the costs it seeks now in any contribution action because these costs have not been incurred yet in the form of primary liability by any PRP.[5] Unlike the PRPs in *New Castle*, the United States is not re-labeling a contribution action as a cost recovery action in order to reduce its equitable share or get around a statute of limitations, but rather is instituting a separate cause of action for separate damages. At issue are "costs" to be originally recovered, not liabilities to be allocated; and so allowing the United States to proceed under section 107 does not render section 113 a nullity or allow the government to game the system by choosing between two statutes for the same claim.[6] This outcome is the

---

[5] This may seem at first like suspect reasoning, since the United States itself set the amount of the PRPs' liability when it settled with the other PRPs (less Simon, who refused to settle). In theory, the United States could have made itself as a PRP federal agency jointly and severally liable for the entire cost of cleanup at the outset, in which case Simon's argument that the government should now only have access to a contribution action under section 113 might have some traction. However, as the progress of the Malvern cleanup shows, the United States does not always know what its total cleanup costs will be, who all the PRPs are, and whether there are even any federal PRPs when it begins to negotiate settlements. Nor does it have to settle all its costs with all parties at the same time. 42 U.S.C. §9613(f)(2) and (3); § 9622(c)(2). There is no unfairness to Simon as long as the United States does not obtain a double recovery and does not seek reimbursement from Simon for what the government paid as a PRP. It should also be noted that Simon's liability in the Contribution Case was reduced to account for the Army Depot's share of the waste it generated and Simon transported. Contribution Case at 12 n.5, 70. The only possible unfairness is to the CSDG, which undertook all the litigation costs in the Contribution Case while the government stood by --- allowing the United States to now benefit in this case from the determination of Simon's liability without having to pay for it.

[6] I do not reach the question of whether the United States as a PRP may use section 107 rather than section 113 to allocate costs the United States is liable for by judgment or settlement.

logical result of the CERCLA statutory structure under which the United States may be both the offender and the victim: liable for part of the costs, but also authorized to incur costs greater than its own liability. Private and municipal PRPs do not have the same dual roles.

Finally, legislative history indicates that Congress did not intend section 113 to limit the United State's right to cost recovery under section 107. In enacting section 113, the House Report qualified that:

> This section does not affect the right of the United States to maintain a cause of action for cost recovery under Section 107 or injunctive relief under Section 106, whether or not the United States was an owner or operator of a facility or a generator of waste at the site. Where the United States has been required to pay response costs as a generator or facility owner or operator, the United States may maintain an action to recover such costs from other responsible parties.

H. R. Rep. No. 253(I), 99th Cong., 2nd Sess. 1, 79-80 (1985), *reprinted in* 1986 USCANN 2835, 2861-62.

In conclusion, nothing prevents the United States from proceeding under CERCLA section 107, despite the fact that federal agencies are also PRPs.

Issue Preclusion

The United States has moved for partial summary judgment on liability, arguing that the determination of Simon's CERCLA liability in the earlier Contribution Case precludes Simon from relitigating the issue in this case. Because the issue of Simon's liability is identical in the two cases, and because Simon fully litigated the question in the Contribution Case, Simon is now precluded from rearguing its liability.

In the Contribution Case, I found that "it is undisputed that Simon Wrecking transported waste to the Site for treatment or disposal and that there was a release of hazardous substances from the Site...and that Simon Wrecking had substantial input in selecting the Site." Contribution Case at 52-53. The United States argues that collateral estoppel, a.k.a. issue preclusion, prevents Simon from relitigating its liability. To impose issue preclusion, the court must find that:

> (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action... We have also considered whether the party being precluded had a full and fair opportunity to litigate the issue in question in the prior action and whether the issue was determined by a final and valid judgment.

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.* 458 F.3d 244, 249 (3d Cir 2006) (internal citations omitted). The United States was not party to the Contribution Case, so issue preclusion would fall into the category of "non-mutual offensive collateral estoppel." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322 (1979). In addition to the standard issue preclusion factors, non-mutual offensive collateral estoppel requires the court to look carefully for potential unfairness and any detriment to judicial economy:

> [A] defendant may have had little incentive to defend the first action vigorously, "particularly if future suits [were] not foreseeable," the judgment relied upon may have been inconsistent with one or more previous judgments in favor of the defendant, or the second action may "afford[ ] the defendant procedural opportunities unavailable in the first action that could readily cause a different result." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 330-31...Moreover, the use of non-mutual offensive collateral estoppel "does not promote judicial economy in the same manner as defensive use does" because it creates an incentive for plaintiffs "to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment." *Id.* at 329-30.

*Jean Alexander Cosmetics*, 458 F.3d at 248 -249.

The United States meets all of the requirements for obtaining issue preclusion in the form of non-mutual offensive collateral estoppel. Determining Simon's liability as a waste transporter in this case would involve identical facts and law that were fully litigated in the Contribution Case. Liability is defined by CERCLA section 107(a)(4) in both cases, and both cases involve strict liability for the same pollution during the same time period at the same site. Simon's CERCLA transporter liability was extensively litigated in the Contribution Case. Contribution Case at 48-53. My determination of liability was, obviously, central to the outcome of that case. As the sole defendant in the Contribution Case, Simon's interests in the liability determination were fully represented and it had every incentive to zealously litigate its liability. Relitigating liability now would be a waste of judicial resources, requiring this Court to go over exactly the same ground covered in the Contribution Case. Although I might have preferred the United States to file this action during the early stages of the Contribution Case so that I could have consolidated the related actions, I cannot say that this detriment to judicial economy alone warrants allowing Simon to relitigate the issue.

Simon argues in its defense that the United States has not shown that it has recoverable costs under CERCLA and that its liability is therefore not established. It is true that the United States' damages figure has evolved over the course of this case. However, the United States has sufficiently alleged that it incurred costs under CERCLA, which in combination with Simon's status as a "transporter" establishes Simon's liability under CERCLA's strict liability scheme. The exact amount of the United States' damages will be determined in future evidentiary proceedings.

Conclusion

The United States' Motion for Partial Summary Judgment on Liability is granted.

Simon's Cross Motion for Summary Judgment is denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| United States of America<br>Plaintiff,<br><br>v.<br><br>Simon Wrecking, Inc. and Simon<br>Resources, Inc.,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br>No: 06-928 |

## ORDER

This _14th____ day of _March_____, 2006, **IT IS ORDERED**: The United States' Motion for Partial Summary Judgment on Liability (docket entry # 12) is GRANTED. The defendants' Cross Motion for Summary Judgment (docket entry # 18) is DENIED.

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:    Copies **MAILED** on _____ to: